# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00756-GPG-SBP

JOSE GUADALUPE ROCHA,

    Plaintiff,

v.

MATT WINDEN, Warden of Centennial Correction Facility,

    Defendant.

---

## ORDER OF UNITED STATES MAGISTRATE JUDGE

---

**Susan Prose, United States Magistrate Judge**

Before the court is Plaintiff Jose Guadalupe Rocha's Motion to Reopen Discovery, to Compel Production, and for Sanctions Pursuant to Fed. R. Civ. P. 16(b) and 37. ECF No. 126 ("Motion" or "Motion to Reopen Discovery"); ECF No. 130, Memorandum Referring Motion. To attempt to bring clarity to the convoluted procedural history that has culminated in the instant Order, the court begins with a summary of the situation.

The Motion to Reopen Discovery is inextricably intertwined with another motion: Defendant Matt Winden's Motion for Summary Judgment Under Fed. R. Civ. P. 56. ECF No. 95. Mr. Rocha maintains that he cannot prepare a response to the Motion for Summary Judgment without the discovery he seeks in the Motion to Reopen Discovery. For his part, Mr. Winden disputes that the discovery Mr. Rocha claims to need bears any relevance to the only remaining claim in this case: a claim that Mr. Winden, in his individual capacity, retaliated against Mr. Rocha in violation of the First Amendment by transferring Mr. Rocha to the Colorado State

Penitentiary ("CSP") after he invoked his right to remain silent during the investigation of a drug

introduction incident.[1] However, Mr. Winden acknowledges that there is a minimal amount of

documentation, previously not produced, that Mr. Rocha is entitled to have and that Mr. Winden

is willing to provide.

The court has spent significant time examining the briefing and the entire docket. The

court has taken into account its knowledge of the history of this case, including its familiarity

with the statements made by the parties during court proceedings. In the end, the court must act

to ensure that the summary judgment determination rests on an accurate record to which both

parties have contributed. To facilitate that purpose, the court concludes that discovery will be

reopened to a **very limited** extent, consistent with the restrictions on scope and time set forth

below. Accordingly, the court respectfully **ORDERS** that Mr. Rocha's Motion to Reopen

Discovery is **GRANTED in part** and **DENIED in part**, as further delineated in this Order.

### A.    Relevant Background

There has been much back and forth between the parties—and numerous court filings—

concerning Mr. Rocha's allegations that he has not received the discovery he has requested in

this case. The court will drill down on those aspects of the record that relate to the court's

determination that some discovery, of a **very limited** nature, will be allowed.

---

[1] The Motion for Summary Judgment describes this investigation as having been prompted by a monitored call between Mr. Rocha and his mother which indicated the two were coordinating to introduce drugs into the Centennial Correctional Facility, and investigators' subsequent confirmation that Mr. Rocha's mother sent him a letter that tested positive for synthetic cannabinoids. *See* ECF No. 95 at 3 ¶¶ 10-14.

**1.      Discovery Timeline and the Initial Briefing on the Motion**

On May 16, 2025, Mr. Rocha filed a Notice to the Court Regarding Email

Communication, Discovery Request, and Incomplete Disclosures, in which he identified records

that he considered necessary to support his retaliation claim, but that allegedly had not been

produced to him. ECF No. 86. In an August 11, 2025 filing entitled "Plaintiff's Response to

Defendant's Motion for Summary Judgment and Request for Relief Under Rule 56(d)," Mr.

Rocha did not substantively address the Motion for Summary Judgment, but instead asserted that

Mr. Winden's counsel did not produce requested discovery materials and failed to communicate

with him regarding discovery. *See* ECF No. 107 at 2 ("During my deposition with the Attorney

General's office, I also identified specific discovery materials and issues I need to support my

claims. These included documentation, reports, and internal communications related to

classification, transfers and restrictions imposed on me. Those requests were made on the record

but were never followed up on or fulfilled by Defendant."). Mr. Rocha asserts that, without this

discovery material, he cannot respond to the Motion for Summary Judgment. *Id.* at 4.

Mr. Winden, through his counsel, takes a different view of the matter. He asserts that, on

June 2, 2025, his counsel responded to Mr. Rocha's discovery requests "in full." ECF No. 125 at

2 (citing ECF No. 92); *see also* Defendant Winden's Responses to Plaintiff's First Set of

Requests for Production of Documents dated June 2, 2025, ECF No. 92-1.

On October 10, 2025, Mr. Rocha filed the instant Motion to Reopen Discovery, in which

he reiterates his claim that defense counsel has resisted producing the discovery he needs and

that "key categories remain missing." *See* ECF No. 126 ¶ 19. Those allegedly missing

"categories" of information include the full audio recording of a "COPD," or Code of Penal

3

Discipline, hearing; an Office of Inspector General ("OIG") file, including "field notes, witness

statements, and communications"; Internal Classification Committee ("ICC") and "PC" records;

and "informant and Montoya interview materials." *Id.* ¶¶ 13-16.

On November 25, 2025, defense counsel provided a detailed response to Mr. Rochas's

allegations concerning Defendant's alleged non-responsiveness to discovery, including by means

of a sworn declaration submitted by LeAnn Puga, a legal assistant employed by the Colorado

Department of Corrections ("CDOC") who works as a Team Leader for the Sterling Correctional

Facility ("SCF") where Mr. Rocha has been incarcerated since September 2024, with brief

transfers to other facilities between January 17 and February 13, 2025, when he returned to SCF.

Puga Decl., ECF No. 138-1 ¶¶ 1, 3, 13-14.[2] Ms. Puga's declaration, along with other information

submitted by defense counsel, establishes the following timeline of activities concerning the

production of discovery materials to Mr. Rocha:

- A disc containing discovery materials was mailed to Mr. Puga from the Colorado Attorney General's Office on December 17, 2024, which was received at SCF in late December 2024. (Puga Decl. ¶ 15).

- Defense counsel mailed Mr. Rocha a privilege log accompanying the discovery materials on the disc, for which Mr. Rocha signed on December 14, 2024. (ECF No. 138-2). Ms. Puga gave Mr. Rocha another copy of the privilege log on November 19, 2025, after he claimed it was missing. (Puga Decl. ¶ 24).

- The disc was uploaded to Mr. Rocha's SCF law library folder three times: once upon receipt, again on April 17, 2025, and again on September 15, 2025. (*Id.* ¶ 16).

- The files on the disc included six audio files, including one titled "00428 CONFIDENTIAL Offender Rocha COPD hearing.mp4." (*Id.* ¶ 17). The files on the

---

[2] The court has been given no reason to question the veracity of Ms. Puga's statements and finds her testimony credible.

disc also included written discovery that Mr. Rocha had requested, including Intelligence Reports, Office of Inspector General investigation records, and confidential informant information. *See* ECF No. 92-1 at 2-4 (responses to requests for production numbers 2, 6, 7).

- As of November 25, 2025, Mr. Rocha's Law Library Access Report showed that he had been scheduled for 31 appointments with the law library since November 2024. (Puga Decl. ¶ 18; ECF No. 138-2).

- Mr. Rocha appeared for thirteen of those appointments on the following dates in 2025: March 6, March 13, April 16, April 24, September 17, September 18, September 24, September 25, September 30, October 10, October 17, October 28, and November 5. (Puga Decl. ¶ 19).

- Mr. Rocha was listed as "No-Showed" for appointments at the law library on March 6, September 16, and October 2, 8, 9, 15, 16, and 29, 2025. (*Id.* ¶ 20).[3]

- On September 17, 2025, Mr. Rocha brought to Ms. Puga's attention for the first time since the disc arrived in December 2024 that he was unable to access the COPD audio file labeled "00428 CONFIDENTIAL Offender Rocha COPD hearing.mp4." (*Id.* ¶ 21).

- On September 18, 2025, the prison's Office of Information Technology converted the file from an MP4 format to an MP3 format, giving Mr. Rocha access to the file that day. (*Id.* ¶ 22).

- Mr. Rocha did not mention the COPD audio file again until November 19, 2025, when he informed Ms. Puga that the audio only played two minutes, but it was supposed to be approximately forty minutes in length. (*Id.* ¶ 25).

- Ms. Puga determined the source of the technical issue and, on November 20, 2025, the Attorney General's Office provided a new copy in MP3 format, to eliminate the need to convert the file to another format on the prison's end. (*Id.* ¶ 28). Ms. Puga confirmed that the COPD hearing audio "played in its entirety" on the computers to which SCF prisoners have access. (*Id.* ¶ 29).

---

[3] The overlap of days in which Mr. Rocha both went to the law library and "No-Showed" is attributable to some appointments being scheduled in the mornings and others in the afternoons.

- On November 24, 2025, Ms. Puga provided Mr. Rocha the fully-functioning COPD hearing audio. (*Id.* ¶ 30).

- Mr. Rocha continues to have access to the law library and all discovery materials. ECF No. 146 at 2 n.2 (stating that defense counsel "confirmed with SCF law library supervisor LeeAnn Puga, that Plaintiff has continued access to the law library and discovery materials").

Further, per the representation of Mr. Winden's counsel, as of November 25, 2025:

> Plaintiff has not communicated directly with defense counsel since April 2025 when he sent his *First* (and only) Written Discovery Requests, (ECF No. 86 at ¶ 1; ECF No. 124 at ¶ 18), which were responded to on June 2, 2025. (ECF Nos. 92, 92-1). Additionally, Plaintiff never communicated with anyone at CDOC to set up any depositions, nor did he ever send any type of communications, subpoenas for testimony, or other notices to defense counsel[.]

ECF No. 138 at 3.

### 2.    Supplemental Briefing on the Motion

In light of the information that emerged from the initial briefing on the Motion to Reopen Discovery, the court was left to wonder exactly what discovery Mr. Rocha claimed had been withheld from him. On January 6, 2026, this court held a status conference and ordered the parties to provide limited supplement briefing concerning any matter relevant to the Motion to Reopen Discovery, with specific emphasis on documents Mr. Rocha contended still had not been produced to him. ECF No. 144 at 2. Mr. Winden filed his supplemental brief on January 27, 2026 (ECF No. 146), and Mr. Rocha filed his on February 5, 2026 (ECF No. 147).

Mr. Winden's counsel represents that, to facilitate the supplemental briefing ordered by the court, "counsel spoke with Plaintiff on January 13, 2026, to clarify which documents he seeks or believes are being withheld." ECF No. 146 at 2. Based on that conversation, defense

6

counsel gleaned that the documents Mr. Rocha still seeks fall into three categories:

(1)    Internal Classification Committee ("ICC") minutes from Limon Correctional Facility ("LCF") from February 2021 to May 2022;

(2)    ICC Minutes from Centennial Correctional Facility ("CCF") from May 2022 to November 2022; and

(3)    Office of Inspector General ("OIG") "intelligence reports", other "confidential records" or other documents in which Mr. Rocha was investigated.

*See id.* Counsel's conclusion squares with Mr. Rocha's own description of the documents he asks the court to order Defendant to produce: "the ICC minutes and related classification/transfer decision records relevant to Plaintiff; Intelligence Unit and/or OIG materials relied upon to justify sanctions/transfer/classification and to pursue COPD charges against Plaintiff (including references to informants, where permissible, with redactions as appropriate); and any materials necessary to reconcile the discrepancies between COPD sworn testimony and earlier investigative reports." ECF No. 147 at 7.

Counsel for Mr. Winden concedes that the ICC minutes from the Centennial Correctional Facility are relevant to the one claim that remains in this case: that Mr. Winden allegedly retaliated against Mr. Rocha "by having him transferred from CCF to CSP after Plaintiff invoked his right to remain silent on November 9, 2022, during a drug introduction investigation." ECF No. 146 at 3; *id.* at 4 (describing the ICC minutes as "contain[ing] a single discrete entry pertaining to Plaintiff"). Defense counsel argues, however, that the ICC minutes from the Limon Correctional Facility are not relevant to the retaliation claim against Mr. Winden, *id.* at 4-5, and the record gives the court no reason to suppose that Mr. Winden had any involvement with Mr.

Rocha, in any way, during the period of Mr. Rocha's incarceration at Limon.

Defendants counsel further asserts that all relevant OIG records have been disclosed to Mr. Rocha. *Id.* at 5. Specifically, counsel states that "Defendant already produced all materials in the relevant OIG drug investigation" of Mr. Rocha—that is, the investigation that took place at CCF in October 2022. *Id.* (referencing 58 pages of bates-numbered documents).[4] One audio interview connected with the investigation at CCF was withheld on the basis of the official information privilege on grounds that "disclosure would implicate institutional safety and security concerns." *Id.* Mr. Winden has declined to produce the broader scope of OIG records related to all instances in which Mr. Rocha has been investigated during his confinement in CDOC custody, which Mr. Winden asserts is overbroad and disproportionate to the needs of a case in which "[t]he only remaining issue . . . is whether [Mr. Winden] retaliated against Plaintiff because he invoked his right to remain silent during a drug introduction investigation" at CCF in October 2022. *Id.* at 5-6.

Mr. Rocha presses for the full panoply of ICC minutes and OIG documents related to him—not limited to the October 2022 investigation at CCF—based on his review of the "COPD audio," which he claims "revealed new, material information that was not previously available" to him, including the names of other participants in the hearing; an alleged admission by the hearing officer of a procedural due process violation and "a recommendation to dismiss or throw out the case"; and other indications of "acknowledged procedural defects." *Id.* at 1.

---

[4] To identify potentially responsive OIG materials, counsel represents that she spoke with a CDOC OIG Analyst who confirmed that there were "[n]o additional OIG records . . . relating to the October 2022 investigation relevant to Plaintiff's claim" against Mr. Winden. ECF No. 146 at 6.

**B.    Analysis**

The court first addresses Mr. Rocha's request to reopen discovery and then analyzes the

impact of Mr. Winden's concession that ICC minutes from the Centennial Correctional Facility

are relevant and should be produced.

**1.    Mr. Rocha Has Not Shown Good Cause to Reopen Discovery to the Extent He Seeks**

Starting with the governing legal principles, Rule 16(b) provides that a scheduling order

"may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"In practice, this standard requires the movant to show the 'scheduling deadlines cannot

be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank*

*Assoc.*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204

F.R.D. 667, 668 (D. Colo. 2001)). To satisfy the diligence standard, the moving party "must

provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir.

2009) (quotation omitted). "A party's delay in performing the pretrial preparation necessary to

recognize a claim or defense does not satisfy Rule 16(b)(4)'s good cause standard." *Sher v.*

*Amica Mut. Ins. Co.*, 722 F. Supp. 3d 1176, 1181 (D. Colo. 2024), *reconsideration denied*, 2024

WL 4504565 (D. Colo. Oct. 16, 2024) (citing *Colo. Visionary Acad. v. Medtronic, Inc.*, 194

F.R.D. 684, 688 (D. Colo. 2000)).

Whether to allow modify a scheduling order "to extend or reopen discovery is committed

to the sound discretion" of the court. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)

(citations omitted). In exercising this discretion, courts typically consider the following factors:

(1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed;

(3) whether the non-moving party would be prejudiced; (4) whether the moving party was

diligent in obtaining discovery within the guidelines established by the court; (5) the

foreseeability of the need for additional discovery in light of the time allowed for discovery by

the court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id.* (citations

omitted). Because the fourth factor focuses on the critical question of diligence, the court begins

there.

       ***Whether Mr. Rocha has been diligent in conducting discovery.*** The record demonstrates

that Mr. Rocha has failed to exercise diligence in pursuing discovery.

       The timeline illustrates that Mr. Rocha had visited the law library five times by the time

this court conducted a status conference on April 23, 2025. *See* Courtroom Minutes, ECF No. 83.

At that conference, based on Mr. Rocha's representations concerning his purported lack of

access to discovery materials, the court reopened discovery (which had closed on April 17, 2025,

*see* ECF No. 70) to allow Mr. Rocha to issue one additional request for production of documents.

ECF No. 83 at 2. The court then extended the discovery deadline to June 2, 2025, and the

deadline for filing dispositive motions to July 28, 2025. *Id.*

       Before the June 2, 2025 discovery cut-off, Mr. Rocha only went to the law library one

more time: on April 24, 2025. Puga Decl. ¶ 19. After that, he did not schedule an appointment

with the law library until September 16, 2025—nearly two months after Mr. Winden filed the

Motion for Summary Judgment—and Mr. Rocha "No-Showed" for the September 16

appointment too. *Id.* Mr. Rocha did not discover the technical problem with the COPD audio file

before September 17, 2025, because he made no attempt to listen to it before that date. *Id.* ¶ 21.

Prison staff responded and believed the problem had been fixed as of September 18. *Id.* ¶ 22.

They had no reason to doubt that because Mr. Rocha didn't attempt to listen to the audio again

until two months later, on November 19, 2025, when he informed Ms. Puga that the recording

was still incomplete. *Id.* ¶ 25. Mr. Rocha also made no effort to engage with defense counsel

during the critical period between the close of discovery and the summary judgment deadline.

Indeed, he made no attempt to communicate directly with defense counsel for at least a full

seven months—from April 2025 to November 25, 2025—including to discuss any issue he may

have had with the discovery responses counsel provided to him on June 2, 2025. ECF No. 138 at

3.

        In light of this record, the court cannot credit Mr. Rocha's assertion that he "could not act

on the COPD audio's contents until the file was reviewable," and that "[o]nce it was, [he] acted

promptly." ECF No. 147 at 6. The COPD hearing audio was available to him for nine months

before he first made an effort to listen to it in September 2025, and then he delayed another two

months before apprising prison personnel that it still was not functional. All told, Mr. Rocha's

actions resulted in an eleven-month delay between the time he could have accessed the audio he

now claims to be of critical importance and the time he actually did.

        Furthermore, as to Mr. Rocha's request to reopen discovery "to take limited depositions"

of the COPD hearing officer, a lieutenant named Cassidy, and COPD board members Cooper,

Langley, and Robertson, *see* ECF No. 147 at 8, he has demonstrated a lack of diligence in this

regard, too. This court granted Mr. Rocha's motion for leave to depose Mr. Winden, Mr. Cooper,

and others on July 17, 2025, ECF No. 93, but Mr. Rocha took no steps to conduct those

depositions.[5] To the extent he contends that the names of these individuals were unknown to him

---

[5] Based on Mr. Rocha's representation that he is indigent, the court assumes that his financial
limitations would prevent him from taking these depositions even if discovery were reopened. As

until he listened to the COPD hearing audio—which there is reason to doubt, based on the record

before the court—that delay is entirely attributable to him. *See Sher*, 722 F. Supp. 3d at 1176 (the

good cause standard under Rule 16(b)(4) is not met where a party delays "in performing the

pretrial preparation necessary to recognize a claim or defense").

In sum, Mr. Rocha's demonstrable inaction, both with respect to reviewing the discovery

he had been given and not following through on conducting depositions, evinces a lack of

diligence on his part that compels the court to find the fourth *Smith* factor weighs strongly

against reopening discovery.

***Whether trial is imminent.*** Mr. Rocha argues that, because no trial has been set,

"reopening limited discovery is less disruptive and more equitable." ECF No. 147 at 6 (citing

*Smith*, 834 F.2d at 169). To be sure, no trial date has been set and will not be set until the

question of Mr. Winden's entitlement to qualified immunity is resolved on summary judgment.

*See* Courtroom Minutes of Preliminary Scheduling Conference, ECF No. 35 at 2 ("If no

summary judgment motions are filed, the parties shall contact Judge Gallagher's chambers

jointly via email within ten days after the dispositive motions deadline to set a Final Pretrial

Conference. If dispositive motions are filed, the parties shall contact Judge Gallagher's chambers

jointly via email within thirty days after the Court has issued a ruling (assuming the case survives

a motion for summary judgment) to set a Final Pretrial Conference.").

Even so, the fact that trial is not imminent is due, in part, to Mr. Rocha's conduct in this

case. Had he complied with his discovery obligations in a timely manner, he would have

---

this court has explicitly informed Mr. Rocha, he "shall be responsible for organizing, and paying,
for, any deposition he wishes to conduct." ECF No. 93.

responded to Mr. Winden's motion for summary judgment months ago. Assuming he could have

overcome Mr. Winden's assertion of qualified immunity, odds are that Judge Gallagher would

have set a trial by now. The fact that trial is not imminent because of Mr. Rocha's conduct during

the litigation does not tip the first *Smith* factor in favor of reopening discovery.

*Whether Mr. Winden opposes reopening discovery*. Mr. Winden does oppose reopening

discovery to the extent Mr. Rocha advocates, and for a valid reason. As Mr. Winden notes, he

filed his Motion for Summary Judgment months ago, and Mr. Rocha's excuse for not making a

substantive response rests on his "fail[ure] to depose people he did not previously prioritize and

fail[ure] to address the discovery files that he has had access to since December 2024." ECF No.

138 at 10. Thus, this factor weighs against reopening discovery.

*Whether Mr. Winden will be prejudiced by reopening discovery in the manner Mr.*

*Rocha demands*. Mr. Rocha argues that Mr. Winden will not suffer "undue prejudice" because

Mr. Rocha seeks only "narrow and targeted" discovery, imposing but an "incremental burden."

ECF No. 147 at 6. Mr. Rocha emphasizes that this discovery would be completed in a short span

of sixty to ninety days, that he wants to depose only those "specific individuals revealed on the

audio," and that his document requests similarly are limited and "tied to Intelligence/ICC and the

COPD process." *Id.* Mr. Rocha's characterization inaccurately minimizes the breadth of his

intended discovery and consequently fails to acknowledge the actual prejudice to Mr. Winden.

Mr. Winden is prejudiced because the discovery Mr. Rocha would pursue would

substantially expand the scope of the case in that it is extraneous to the only remaining question

at this juncture: whether Mr. Rocha can satisfy his heavy, two-part burden to overcome Mr.

Winden's assertion of qualified immunity. *See, e.g.*, *Surat v. Klamser*, 52 F.4th 1261, 1270-71

(10th Cir. 2022) (recognizing that to overcome the defense of qualified immunity, "the onus is

on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and

(2) that the right was clearly established at the time of the challenged conduct") (quotations

omitted); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014)

(characterizing this as a "heavy two-part burden"); (quoting *Medina v. Cram*, 252 F.3d 1124,

1128 (10th Cir. 2001)). To meet this burden, Mr. Rocha must show that *Mr. Winden* personally

participated in the alleged violation of Mr. Rocha's constitutional rights in violation of clearly

established law. *See Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) ("[A]lthough the

requirement of personal participation, including the question of supervisory liability, is a

component of liability under § 1983 and *Bivens,* we also incorporate it into our qualified-

immunity analysis, where we ask whether a clearly established constitutional right has been

violated.") (citing *Dodds v. Richardson*, 614 F.3d 1185, 1193-94 (10th Cir. 2010)).

In the reopened discovery scenario Mr. Rocha now posits, he would depose no fewer five

persons who (unlike Mr. Winden) participated in the COPD hearing: Hagan/Higgin, Cassidy,

Cooper, Langley, and Robertson, as well as "any other newly identified material witnesses

revealed in the audio. ECF No. 147 at 7. Discovery designed to delve into the actions of other

CDOC officials strays far from the core question of Mr. Winden's entitlement to qualified

immunity. And the same can be said of ICC minutes from a correctional facility in which Mr.

Winden is not alleged to have worked or encountered Mr. Rocha, as well as "Intelligence Unit

and/or OIG materials" encompassing Mr. Rocha's history of discipline in the prison going back

to 2014. *See id.*; *see also* ECF No. 95-2 at 8 (listing Rocha's July 8, 2014 disciplinary conviction

related to "phone conversation which deals w/obtaining drugs and telling how to get them into

14

the facility").

In short, the discovery Mr. Rocha wants now (and could have sought during the

discovery period) would improperly expand the scope of this litigation and significantly delay

the resolution of the question of whether Mr. Winden is entitled to qualified immunity. To permit

this litigation to be diverted in the fashion Mr. Rocha seeks certainly prejudices Mr. Winden.

This factor, too, weighs against granting Mr. Rocha's request to open discovery.

*Whether the additional discovery Mr. Rocha seeks was foreseeable.* Mr. Rocha says the

discovery was not foreseeable until he heard the COPD hearing audio, *see* ECF No. 147 at 6, but

Mr. Rocha could have listened to that audio months before he did. Mr. Rocha cannot

manufacture a lack of foreseeability by closing his eyes to information that was long within his

reach. This factor weighs against Mr. Rocha's request to reopen discovery.

*Whether the discovery Mr. Rocha seeks will lead to admissible evidence.* As the court

has explained, the discovery Mr. Rocha seeks to conduct at this advanced stage of the case is

immaterial to the remaining question of whether Mr. Winden is entitled to qualified immunity

and Mr. Rocha's ability to overcome that defense. This point is emphasized by Mr. Rocha's

desire to dig into such matters as "whether *decisionmakers* proceeded despite acknowledged due

process violations," and "the identity and testimony of the *board members and charging*

*officer*(*s*)," *see id.* (emphasis added)—questions which have de minimis, if any, bearing on Mr.

Winden's personal involvement in an alleged violation of Mr. Rocha's constitutional rights. Put

otherwise, this additional discovery is unlikely to reveal admissible evidence on these dispositive

questions and is therefore neither relevant nor proportional to the needs of the case. Hence, this

factor also weighs against reopening discovery for the purposes Mr. Rocha seeks.

***Conclusion regarding Mr. Rocha's request to reopen discovery.*** On balance, the court

respectfully finds that the relevant factors do not warrant reopening discovery in the manner Mr.

Rocha seeks.

2.    **Good Cause Exists to Allow Limited Discovery Concerning the
New Documents to be Produced by Defendant**

Although Mr. Rocha has not demonstrated good cause to reopen discovery to obtain the

depositions and documents he seeks, that does not end the court's assessment. The court must

take into account the fact that Mr. Winden, after conferral between his counsel and Mr. Rocha,

has agreed to produce the ICC minutes from Centennial Correctional Facility related to Mr.

Rocha's November 18, 2022 transfer to CSP. *See* ECF No. 146 at 4. Mr. Winden states that this

document "contains a single discrete entry pertaining to Plaintiff," and that Mr. Winden will

"produce the ICC meeting attendance roster and the limited pages reflecting the Restrictive

Housing Review conducted at that meeting." *Id.*[6]

The practical effect of defense counsel's determination that a group of relevant

documents, however small, should be produced to Mr. Rocha is that discovery must be opened,

even if not to the extent Mr. Rocha demands. In light of the tacit acknowledgment that the

documents Defendant intends to produce are relevant to Mr. Rocha's claims (or Mr. Winden's

defenses), the court finds good cause to permit Mr. Rocha to make some additional inquiry into

those materials he presumably has not seen to date. Therefore, following receipt of the

---

[6] Mr. Winden represents that the cases of many prisoners were reviewed during that meeting and
that entries not related to Mr. Rocha will be "redacted to protect confidential information and
avoid disclosure of irrelevant material." ECF No. 146 at 4. The court finds good cause for this
limitation and approves it.

documents, Mr. Rocha will be allowed to submit to Mr. Winden **five (5) interrogatories,**

**including discrete subparts**, limited to the subject-matter of the documents. Mr. Rocha is

respectfully advised that he shall not include multiple questions within each interrogatory, and

that the interrogatories are not a license for him to inquire about any issue outside the subject

matter of the new documents to be produced.

This **<u>very limited</u>** additional discovery shall proceed on the following schedule:

March 30, 2026:       Deadline for Defendant to produce to Mr. Rocha the above-referenced

                      CCF's ICC minutes and related documents, subject to proper redactions

                      for confidential information, related to Mr. Rocha's transfer to CSP.

April 20, 2026:       Deadline for Mr. Rocha to submit to Defendant **five (5) interrogatories,**

                      **including discrete subparts**, limited to the subject-matter of the ICC

                      minutes and related documents.

May 20, 2026:         Deadline for Defendant to respond to Mr. Rocha's interrogatories.

**<u>No extensions of these deadlines will be granted absent extraordinary circumstances</u>.**

### 3.    No Sanctions Will Be Awarded Against Mr. Winden or His Counsel

Finally, the court rejects Mr. Rocha's contention that Mr. Winden or his counsel has

engaged in any sanctionable conduct in this matter. *See* ECF No. 126 at 3 ¶¶ 21-22.

The record provides no reason for this court to countenance Mr. Rocha's assertion that

defense counsel has engaged in "repeated obstruction and misrepresentation" that has "caused

[him] severe prejudice." *Id.* ¶ 21. To the contrary, it is *Mr. Rocha* who let months on end go by

before looking at discovery that defense counsel had provided to him, and it is *Mr. Rocha* who

made no attempt to communicate with defense counsel for period of more than half a year.

17

Furthermore, a review of the entire docket gives this court no reason to conclude that defense

counsel has acted other than with professionalism and integrity at all times during this litigation

and—as pertinent to Mr. Rocha's specific allegations—in compliance with their obligations

under the Federal Rules of Civil Procedure, the Local Rules of Practice of this court, and the

Colorado Rules of Professional Conduct.

Accordingly, insofar as the Motion to Reopen Discovery seeks sanctions against Mr.

Winden or his counsel, it is **DENIED**.

## CONCLUSION

For the foregoing reasons, it is respectfully **ORDERED** that Plaintiff's Motion to Reopen

Discovery, to Compel Production, and for Sanctions Pursuant to Fed. R. Civ. P. 16(b) and 37

(ECF No. 126), is **GRANTED in part**, to the **very limited** extent that Defendant shall be

required to produce the documents described in this Order and shall be required to respond to

five interrogatories, including discrete subparts, specifically directed to those documents. The

Motion is **DENIED** in all other respects.[7]

---

[7] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after
service of a Magistrate Judge's order or recommendation, any party may serve and file written
objections with the Clerk of the United States District Court for the District of Colorado.
28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection
will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See
Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver
rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119,
1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require
review, including when a "pro se litigant has not been informed of the time period for objecting
and the consequences of failing to object").

DATED: March 10, 2026                        BY THE COURT:

_____

Susan Prose
United States Magistrate Judge